**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAN LAWS SMITH SHACKELFORD,<br><br>Plaintiff,<br><br>v.<br><br>DAVID J. KAUTTER; JERRY MARCOTTE; and BOY'S REPUBLIC OF CHINO, CA,<br><br>Defendants. | Case No.: 18cv1176-MMA (KSC)<br><br>**ORDER GRANTING MOTION TO PROCEED *IN FORMA PAUPERIS*;**<br><br>[Doc. No. 2]<br><br>**DISMISSING CASE WITH PREJUDICE; AND**<br><br>[Doc. No. 1]<br><br>**DENYING AS MOOT MOTION TO APPOINT COUNSEL**<br><br>[Doc. No. 3] |

On June 6, 2018, Plaintiff Dan Laws Smith Shackelford ("Plaintiff"), proceeding *pro se*, filed this action against Defendants David J. Kautter, Jerry Marcotte, and Boy's Republic of Chino, CA (collectively, "Defendants"). Doc. No. 1 ("Compl."). Currently pending before the Court is his motion to proceed *in forma pauperis* ("IFP") and Plaintiff's motion to appoint counsel. Doc. Nso. 2, 3. For the reasons stated below, the

Court **GRANTS** Plaintiff's motion to proceed IFP, **DISMISSES** Plaintiff's Complaint with prejudice, and **DENIES AS MOOT** Plaintiff's motion to appoint counsel.

### BACKGROUND

Plaintiff contends that between 1996 and 1997, either "$10, 12, or 22 million" of his lottery check winnings were stolen. Compl. at 2. He seeks the disclosure of Defendants' Jerry Marcotte's and his employer, Boy's Republic of Chino's banking records from the International Revenue Service ("IRS") to "provide[ him] with the paper work to prove the theft" so that he can file a second lawsuit "against them for recovery of stolen money." *Id.*

Plaintiff's mother's "Fairbanks relatives controlled the Pure Oil Co. up until 1963 when JFK ripped that off making it 'Eastern Union 76 Oil Co.'" *Id.* Plaintiff's "more distant Union 76 Doherty cousins were causing problems with NASA in how the Los Angeles Defense industry was run." *Id.* Plaintiff also has "machine tool industry ties, hen[c]e 4 motor vehicle factories and a CIA ship had been built-off-of-[his]-social life." *Id.* Plaintiff alleges he "was targeted by the 1987 Chrysler to an 'Guarantee' Law, which forced [Anne Burke] to get it 'approved.'" *Id.* at 3. Plaintiff notes that Anne Burke "got pregnant and dropped out of si[ght] real quick," and that the child "turned out to be [Plaintiff's] 6th out-of-wedlock kid before [he] knew that [he] was a father." *Id.* According to Plaintiff, "[t]hat started a real fast stock market run-up from the Dow Jones 800s level, the same day." *Id.*

"In that era of expanded credit [(the 1980s)], T. Boone Pickens . . . took a run at buying several larger oil co's, culminating in a fight with [Plaintiff's] real tough Union 76 cousins." *Id.* "Union 76 paid T. Boone Pickens a hi[gh] price to go away, resulting in E. Arco selling at the same time." *Id.* Accordingly, "76 was loaded up with debt & they became less of a menace." *Id.* "The E. Arco deal also achieved peace with the USSR almost bloodlessly." *Id.* "Russia through their majority ownership of Chevron & the Soviet Ukraine through Texaco had spent about $25 billion including the penzoil-getty-Texaco lawsuit to acquire Gulf Oil & Getty Oil, which Reagan put all his [money] into

fancy defense hardware." *Id.* at 3-4. "E. Arco sold based on [Plaintiff's] witness in Massachusetts" and Plaintiff "asked in writing that [his] former Pure Oil Co. marketing district be restored to [him]." *Id.* at 4. However, "[w]hat Reagan decided has to do with bribery or 'water.'" *Id.* Arco purportedly "sold for about $1.3 billion . . .divided 2/3 Shell Oil & 1/3 Sun O Co." *Id.*

Plaintiff then explains that he "used to be a CA licensed real estate salesman" and should have received "$12 or 13 million commission or 'finders fee' at 1985 valves for property." *Id.* "There has been a lot of fighting in the last over 30 years, dead bodies all over the place & the 2 buyers in [Plaintiff's] opinion are complete financial dead beats. Both Co's traffic a lot of cocaine & heroin." *Id.*

Plaintiff alleges that "Reagan 'forgot' to pay [him]" and that "Bill Clinton . . . rigged a $10 million Publishers Clearing House Contest . . . in [Plaintiff's] favor." *Id.* at 5. By June of 1997, Plaintiff was in jail because he was framed by "Top Shell" and the CIA station chief in Santa Monica. *Id.* Plaintiff alleges that the chief "had killed a Douglas Aircraft Co. VP in an earlier era, & when they tried to kill [Plaintiff, he] contacted the lawyer son of the deceased Douglas VP" who sent Plaintiff's story "to the Union at G.M. in 1998." *Id.* Plaintiff contends this started a 90 day nationwide strike until management ruled that Plaintiff had ties to a motorcycle factory not controlled by "Detroit's legal system." *Id.* The system "settled with the Union & apparently agreed to kill this Top Shell CIA Station chief in a . . . car accident." *Id.* This chief allegedly had a personal "underground nuclear bomb that causes earthquakes, controlled all of the Ford side of what was the Los Angeles, CA defense industry." *Id.*

Plaintiff then alleges that the chief, a "[r]ather heavily armed boss," telephoned him in 1989, "saying that '[Plaintiff] had a fast approaching adult illegitimate kid problem & [Plaintiff] needed to be paid on the shell deal.'" *Id.* The chief's underground nuclear bomb "was financed offshore by" several oil companies, which were "controlled by [Plaintiff's] mom's relatives . . . , that John Kennedy ripped off in 1963, causing our partner Texaco to 'go black' and making the Vietnam War VERY HOT." *Id.* at 5-6.

Plaintiff alleges that he asked Defendant Jerry Marcotte to get his mail at Plaintiff's P.O. box in Santa Monica and later heard that he stole "$10, $12, or $22 million from [Plaintiff] & laundered it through the charitable org. Boy's Republic of Chino, Ca," Marcotte's employer, and "took it back in increased salary." Allegedly, "Bill Clinton did not have the honest to fix this problem [because he was] concerned [with] several attempts at killing [Plaintiff] instead for his Eclipse Jet Jewish heroin trafficking friends." *Id.* at 6. When Hillary Clinton ran for president, Plaintiff was reminded of the issue and thought they "could fix" the problem, so he "filed 3 or 4 IRS forms," but they "produced no results." *Id.* He eventually called the IRS and some employee he spoke to told him "Even if we have discovered the theft and fraud you claim, it's in someone else's tax and banking records. You have to sue the IRS." *Id.* at 7. Accordingly, Plaintiff filed the instant lawsuit. *See id.*

## MOTION TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). An action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). "To proceed *in forma pauperis* is a privilege not a right." *Smart v. Heinze*, 347 F.2d 114, 116 (9th Cir. 1965). A party need not be completely destitute to proceed *in forma pauperis*. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948). "But, the same even-handed care must be employed to assure that federal funds are not squandered to underwrite, at public expense, either frivolous claims or the remonstrances of a suitor

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50.00. *See* 28 U.S.C. § 1914(b) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 1914(b)). The additional $50.00 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

4

who is financially able, in whole or in material part, to pull his own oar." *Temple v. Ellerthorpe*, 586 F. Supp. 848, 850 (D.R.I. 1984).

Plaintiff's IFP application details his net monthly income and his monthly expenses, with his net monthly expenses equaling his net monthly income. *See* Doc. No. 2. Based thereon, the Court concludes that Plaintiff should be allowed to proceed IFP pursuant to 28 U.S.C. § 1915(a) because his submission demonstrates that he lacks the financial resources to pay the costs of commencing this action. *See Rodriguez*, 169 F.3d at 1177. Accordingly, the Court **GRANTS** Plaintiff's motion to proceed IFP. *See* Doc. No. 2.

## SCREENING PURSUANT TO 28 U.S.C. § 1915(E)(2)(B)

When a plaintiff proceeds IFP, the complaint is subject to mandatory screening and the Court must order the *sua sponte* dismissal of any case it finds "frivolous; malicious; fail[ing] to state a claim on which relief may be granted; or see[king] monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners."). "[W]hen determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). In addition, the Court has a duty to liberally construe a *pro se* plaintiff's pleadings. *See id.* In giving liberal interpretation to a *pro se* complaint, however, the court may not "supply essential elements of claims that were not initially pled." *See Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

A complaint should be dismissed for failure to state a claim if, taking all well-pleaded factual allegations as true, it does not contain "enough facts to state a claim to relief that is plausible on its face." *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

5

18cv1176-MMA (KSC)

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (citation omitted).

As outlined above, Plaintiff's factual allegations are "verbose," "confusing," "distracting, ambiguous, and unintelligible," and comprised of "incomprehensible rambling." *See Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058-59 (9th Cir. 2011) (collecting dismissal of cases which did not provide a short and plain statement of the claim showing that the pleader is entitled to relief). Plaintiff's statement of facts are hard to follow and would require the Court to construct the grounds for relief from his pleadings. After careful review, the Court finds that Plaintiff's Complaint is frivolous and void of any plausible claims for relief. *Id.* Not only is the Complaint largely incoherent, but it also does not provide a statutory or legal basis for Plaintiff's claim that the IRS must provide him Defendants' tax and banking records. *See* Compl.

## Conclusion

In light of the foregoing, the Court **GRANTS** Plaintiff's motion to proceed IFP. However, because "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment," the Court **DISMISSES** Plaintiff's Complaint with prejudice.[2] *Franklin v. Murphy*, 245 F.2d 1221, 1228 n.9 (9th Cir. 1984). The Clerk of Court is instructed to close the case and enter judgment accordingly.

**IT IS SO ORDERED**.

Dated: June 11, 2018

Hon. Michael M. Anello
United States District Judge

---

[2] As such, the Court **DENIES AS MOOT** Plaintiff's motion to appoint counsel. Doc. No. 3.